UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                    ORDER

          v.                   16-CR-14(V)(JJM)

RYAN PELTAN,

                Defendant.

_____

      Defendant Ryan Peltan was charged in a two-count indictment with robbery of a pharmacy with a dangerous weapon, 18 U.S.C. §§ 2118(a)(1), 2118(c)(1), and 2; and with brandishing a firearm in furtherance of a crime of violence, 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2.  Docket Item 1.  On July 12, 2016, Peltan moved to suppress evidence.  Docket Items 19 and 21.  After both sides briefed the issue, Magistrate Judge Jeremiah J. McCarthy held an evidentiary hearing.[1]  Both sides then submitted memoranda of law, *see* Docket Items 35 and 36, and on February 23, 2017, Judge McCarthy issued a Report and Recommendation, recommending that Peltan's motion to suppress should be denied.  Docket Item 37.

      After this Court granted the defendant's motion to extend his time to file objections, Docket Item 39, Peltan objected to Judge McCarthy's report and recommendation on March 20, 2017.  Docket Item 40.  The government responded on April 7, 2017, Docket Item 42, and after granting the defendant another continuance, this Court heard oral argument on June 1, 2017.  See Docket Item 45.  For the following

---

[1] On February 2, 2016, this Court referred this matter to Magistrate Judge McCarthy for all proceedings under 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B).

reasons, this Court adopts Judge McCarthy's Report and Recommendation and denies Peltan's motion to suppress.


**FACTS**

Akron, Ohio police officers Amanda Baker and Tim Shmigal were patrolling their assigned district in October 26, 2015, when they spotted the defendant and a companion outside a parked car in a parking lot known for drug activity. Docket Item 31 (hearing transcript) at 7-8. The defendant had apparently taken luggage, clothing, and other personal effects out of the car and was sorting through them. According to one of the officers, what the defendant was doing "seemed odd and out of place." *Id.* at 9. The officers asked the defendant what he was doing, whether he had any prior drug arrests, and whether he had track marks on his arms. *Id.* at 9–12. The defendant gave appropriate and believable answers and showed the officers that his arms were free from track marks. *Id.* at 11-13.

Satisfied with what they learned, the officers drove away. *Id.* at 13. When they ran a search of the vehicle's license plate, however, the officers found that its owner, Ryan Peltan, had two outstanding warrants lodged against him as well as a suspended driver's license. *Id.* at 13-16. They returned to the vehicle and asked the defendant if he was, in fact, Ryan Peltan. When he answered in the affirmative, they arrested him for driving with a suspended license and because of the two outstanding warrants. *Id.* at 17.

Because they had arrested the owner of the vehicle, the officers planned to inventory and tow the vehicle pursuant to Akron police department policy. *Id.* at 19.

That policy permitted the officers to release the vehicle only to its registered owner, and so the officers could not release the car to Derrick Snell, the defendant's companion who was also at the scene. *Id.* at 21.

The car doors were open, and its contents therefore were visible to the police officers. *Id.* at 18, 76-77. Officer Baker observed a box of ammunition on the driver's seat, *id.* at 18, as well as two marijuana pipes and a prescription pill bottle that was later determined to have pills in it. *Id.* at 23. Officer Shmigal also saw the pipes and the prescription pill bottle. *Id.* at 76-77. Both officers testified that the pipes were, in fact, drug paraphernalia, illegal to possess under Ohio law. *See Id.* at 23-26, 76-77, 88-89. The officers therefore arrested Snell as well. *Id.* at 26.

During the inventory search that followed, the officers found pistols, ammunition, and a bag with about 10,000 pills inside it. *Id.* at 28-29.


**ANALYSIS**

The court reviews *de novo* a magistrate judge's Report and Recommendation to suppress evidence in a criminal case. *See* 28 USC § 636(b)(1); Fed. Rule Crim. P. 59(b)(3). In conducting its review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Peltan first challenges his initial encounter with the police officers, arguing that their questions were akin to an illegal stop and frisk. *See Terry v. Ohio,* 392 U.S. 1 (1968). But his argument is misplaced for two reasons.

First, contrary to the defendant's assertions, the officers did not stop him or restrain his liberty in any way. On the contrary, both officers remained in their police car and simply asked Peltan a few questions, which he answered voluntarily. And because the interaction was consensual, it was not a seizure for purposes of the Fourth Amendment.

"[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Until an officer uses physical force or a show of authority to restrain liberty, "an encounter between a police officer and a citizen is consensual, and implicates no Fourth Amendment interest." *United States v. Springer*, 946 F.2d 1012, 1016 (2d Cir. 1991).

> [P]olice questioning, by itself, is unlikely to result in a Fourth Amendment violation. While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response. Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment.

*INS v. Delgado*, 466 U.S. 210, 216. (1984) (internal citations omitted). For that reason, the encounter here did not violate the Fourth Amendment.

Second, even if the initial encounter had been improper in any way, it did not lead to anything. The officers were satisfied with Peltan's responses and therefore drove away. They ran a search of his license plate, but that license plate, of course, was in plain view. And there is nothing in the record to suggest that the officers ran the search because of their encounter with Peltan.

Peltan also argues that the subsequent search of his vehicle was unwarranted and illegal. But his argument is again misplaced, and again for two reasons.

First, the computer search of the vehicle's license plate number revealed that the vehicle's owner had arrest warrants outstanding. Once the officers learned that the defendant was indeed Ryan Peltan—the vehicle owner—they had probable cause to arrest him. And once Peltan was arrested, police policy required that the vehicle be towed, but inventoried first. Docket item 31 at 19-21, 26-27, 29, 91. Such an inventory search consistent with police policy does not violate the Fourth Amendment absent some evidence that the police acted in bad faith or searched the car solely to look for contraband. *See United States v. Arango-Correa*, 851 F.2d. 54, 59 (2d Cir. 1988); *see also Florida v. Wells*, 495 U.S. 1, 4 (1990); *Colorado v. Bertine*, 479 U.S. 367, 370 (1987). Here, there is no such evidence. In fact, Officer Baker testified that police policy required them to inventory every item in the vehicle before it was towed to ensure a complete listing of the defendant's property, as well as to protect the police and the towing company. Docket Item 31 at 28.

Peltan suggests that the police could have released the vehicle to his companion, who did not have outstanding arrest warrants, and that an inventory search therefore was not necessary. But Officer Baker testified that the Akron police department policy permitted the officers to release the vehicle only to its registered owner. *Id.* at 21. In addition, as noted above, Peltan's companion also was arrested because of the drug paraphernalia that was found between the driver's seat and the passenger's seat in the vehicle—in plain view because the doors were wide open. *See Id.* at 23-26, 76-77, 88-89.

And that is the second reason why the search here was justified: as a search incident to arrest. "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *See Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); *United States v. Howard*, 489 F.3d 484, 493 (2d Cir. 2007). Here, the contraband in plain view gave police the necessary probable cause.

The search of the vehicle therefore was justified as a search incident to the arrests of Peltan and his passenger. But even if that were not the case, the search still would have been justified as a routine inventory search required by police policy.

## CONCLUSION

For the reasons stated above and in Judge McCarthy's Report and Recommendation, Docket Item 37, Peltan's motion to suppress is denied.

IT IS SO ORDERED.

Dated: June 28, 2017
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE